# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 04-51612-SCS |
| | ) | |
| NATHANIEL R. & INA M. SILVUS, | ) | |
| | ) | Chapter 13 |
| *Debtors.* | ) | |
| | ) | |
| In re: | ) | Case No. 04-51841-SCS |
| | ) | |
| DONALD E. & | ) | |
| ROSEMARIE JURGENSEN, | ) | |
| | ) | Chapter 13 |
| *Debtors.* | ) | |
| | ) | |
| In re: | ) | Case No. 04-51549-SCS |
| | ) | |
| JOEY B. & LISA A. SANDERS, | ) | |
| | ) | Chapter 13 |
| *Debtors.* | ) | |
| | ) | |
| In re: | ) | Case No. 04-52108-SCS |
| | ) | |
| STEVE S. LEE, | ) | |
| | ) | Chapter 13 |
| *Debtor.* | ) | |
| | ) | |

## MEMORANDUM OPINION

These matters came on for hearing on July 8, 2005,[1] upon the Applications for

---

[1] The initial hearing in the case of Nathaniel R. and Ina M. Silvus, Case Number 04-51612-SCS, was held on May 13, 2005. At that hearing, counsel for the debtors made an oral objection to the Application. The Court also heard testimony from David R. Ruby, the Former Chapter 7 Trustee, and admitted into evidence a Statement of the Trustee's Services. In addition, the Court heard arguments from the parties. The Court determined that it was appropriate to continue the hearing for the Court to review the evidence. Accordingly, the hearing was

Administrative Expense ("Applications") filed in the cases of Nathaniel R. and Ina M. Silvus,

Donald E. and Rosemarie Jurgensen, and Joey B. and Lisa A. Sanders by the Former Chapter

7 Trustee in those cases, David R. Ruby ("Ruby").[2]  At the conclusion of the hearings, the

Court ordered Ruby to file amended applications setting forth the proposed resolutions in

Case Numbers 04-51841-SCS and 04-51549-SCS, as well as the factual basis upon which

he believed his services benefitted the respective estates in each of those cases.  The Court

took all three matters under advisement.  This Court also held a hearing on August 12, 2005,

on the Application for Administrative Expense in the case of Steve S. Lee, Case Number 04-

52108-SCS, in which the same issue was presented to the Court.  Thus, the Court also took

---

continued to June 10, 2005, for the Court to give its oral ruling.  At the hearing on June 10, 2005,
the Court noted that the Chapter 13 plan in the case had not been confirmed.  According to
counsel for the Chapter 13 Trustee, outstanding issues remained as to whether 11 U.S.C. §
1325(a)(4) would be satisfied as well as whether the debtors would be objecting to any unsecured
claims.  Thus, the Court continued the matter to the July 8, 2005, to be heard with similar
applications in the Jurgensen and Sanders cases.

[2]  At the hearing on July 8, 2005, the Court also held a hearing on the Application for
Administrative Expense filed in the case of Robert W. and Ashiya Lloyd, Case Number 04-
51763-SCS.  The Court ordered Ruby to file an amended application setting forth the proposed
resolution in that case, as well as the factual basis upon which Ruby believed his services had
benefitted the Lloyd estate.  The Court took the Lloyd case under advisement along with the
Silvus, Jurgensen, and Sanders cases.  On August 1, 2005, Ruby filed a Motion to Withdraw
Claim, in which he stated that he had received information from the Chapter 13 Trustee
indicating that the general unsecured creditors would receive only a small distribution in the
Lloyd case.  Ruby went on to state that "in light of the Debtors' and their counsel's cooperation
in the case, the Former Trustee believes that his claim as set forth in the Motion and Amended
Proof of Claim should be withdrawn."  Motion to Withdraw Claim by David R. Ruby, filed
August 1, 2005, Case No. 04-51763-SCS, Docket Entry No. 59.  The Court entered an order,
which had been endorsed by Ruby, by counsel for the Lloyds, by the Chapter 13 Trustee, and by
counsel for the Office of the United States Trustee, on August 9, 2005.  Thus, given the
withdrawal of the claim by the Former Chapter 7 Trustee, the issue as to that case is rendered
moot.

the Lee case under advisement. The Court has jurisdiction over these proceedings pursuant

to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and

1409. Upon consideration of the evidence and arguments presented by counsel at the

hearings and of the pleadings submitted by each party, the Court makes the following

findings of fact and conclusions of law.

## I.

## PROCEDURAL HISTORY

These four cases have generally the same procedural history, differentiated primarily

by the dates on which certain events occurred. Additional factual background for each case

is separately set forth below.

Each of the above-captioned cases was originally filed under Chapter 7 of the

Bankruptcy Code. After having comparative market analyses performed upon the residential

real property in each of the cases, Ruby determined that the residences were undervalued by

the respective debtors in amounts ranging from $28,000.00 to $45,000.00, and that the

residences, as assets of the individual estates, should be administered and liquidated. Ruby

then filed Applications to Employ a Real Estate Agent and Motions to Grant Access to Estate

Property in each of the cases.

In response to Ruby's actions, the respective debtors in each case exercised their

absolute right, pursuant to 11 U.S.C. § 706, to convert their cases from ones under Chapter

7 to ones under Chapter 13 of the Bankruptcy Code. Frank J. Santoro ("Santoro") was

3

appointed Chapter 13 Trustee in each of the cases upon their respective conversions. In all

of the cases, Ruby filed objections to confirmation of the respective Chapter 13 plans, and

in two of the four cases, to the amended Chapter 13 plans, which were either resolved by the

parties or sustained by the Court. Ruby also filed Motions to Reconvert two of the four

cases. Applications for Administrative Expenses were filed by Ruby in all of the cases; each

Application requests a different amount in compensation and expenses, but are all based

upon the same theory of recovery, that of quantum meruit. In short, Ruby argues that, but

for his diligence and aggressiveness pre-conversion, each of the cases would have been a "no

asset" case, and thus, that general unsecured creditors would have received no distribution

from the bankruptcy estate. According to Ruby, his diligent and aggressive actions led him

to uncover equity in the properties, and "forced the Debtors to convert their case to a Chapter

13 case to meet their responsibilities to their creditors through a Chapter 13 plan." *See*

Motion for Allowance and Payment of Administrative Priority Expense Claim by David R.

Ruby, filed March 25, 2005, Case No. 04-51612-SCS, Docket Entry No. 68. The remainder

of Ruby's arguments in support of his Applications is discussed in more detail in Section III.

## II.

## FINDINGS OF FACT

### A.

*Nathaniel R. & Ina M. Silvus, Case Number 04-51612-SCS*

Nathaniel R. and Ina M. Silvus filed under Chapter 7 of the Bankruptcy Code on June

4

3, 2004. David R. Ruby was appointed Chapter 7 Trustee. On August 30, 2004, Ruby
requested that the Clerk of the Bankruptcy Court send a notice to all creditors and parties in
interest that there may be assets available for distribution in the Silvuses' case. Also on
August 30, 2004, Ruby filed an Application to Employ Evelyn Wilby as Real Estate Agent
and Motion to Grant Access to Estate Property. Ruby subsequently amended his application
and motion on August 31, 2004. The Silvuses contested the Motion to Grant Access prior
to exercising their right to convert. That contest was subsequently mooted by the Silvuses'
conversion of their case to one under Chapter 13 on October 7, 2004.

After the conversion, on October 25, 2004, Ruby filed a proof of claim in the
Silvuses' case, asserting an administrative priority claim of $3,511.57. That amount was
itemized as $1,903.50 for "Quantum meruit value of services provided by Trustee;" $108.07
for expenses; and $1,500.00 for "Quantum meruit value of services provided by real estate
agent." The Silvuses objected to Ruby's claim, asserting that Ruby was not entitled to file
a claim because, as the Former Chapter 7 Trustee, he was not a creditor of the debtor as
defined in Section 101 of the Bankruptcy Code. The objection to Ruby's claim was resolved
by the parties, and an order was entered on March 14, 2005, which provided that Ruby's
claim was thereby withdrawn.[3] That order also permitted Ruby to file an application for the
payment of administrative expenses.

In the interim, Ruby objected to the confirmation of both the original and amended

---

[3] The Court notes that Ruby has not filed a subsequent or amended proof of claim in the
Silvus case.

5

Chapter 13 plans; both objections were resolved by the parties. Also in the interim, Ruby

filed an Objection to Dismissal and Motion to Reconvert the Silvuses' case in response to

an order that was entered settling the objection by the Chapter 13 Trustee to the Silvuses'

Chapter 13 plan. That order provided, in part, that if the Silvuses failed to timely file a

modified Chapter 13 plan, the Chapter 13 Trustee could submit an order dismissing the

Silvuses' case without notice or further opportunity for a hearing. The Objection to

Dismissal and Motion to Reconvert was later withdrawn by Ruby, per an order entered on

April 26, 2005. The Silvuses' Chapter 13 plan was confirmed by an order of this Court

entered July 8, 2005.

An additional issue arose during the course of the Silvus case prior to confirmation,

that of proper categorization of their debt. More particularly, the debtors originally

scheduled their debts as held solely by joint creditors. The debtors filed modified schedules

on March 15, 2005, to clarify that only a small amount (approximately $3,000.00) of their

total unsecured debt consisted of joint debt.

Ruby filed his Application for Administrative Expense in the Silvus case on March

25, 2005. In his Application, Ruby asserts that Mr. and Mrs. Silvus undervalued their

residential real property in their bankruptcy schedules by valuing the property at

$110,200.00. Ruby claims that, "based upon a comparative market analysis and personal

inspection of the Property conducted by the Former Trustee's Court-approved, experienced

local real estate agent, Evelyn Wilby of Reliance Realty, Inc., the Property has been valued

6

at $149,900.00." *See* Motion for Allowance and Payment of Administrative Priority Expense

Claim by David R. Ruby, filed March 25, 2005, Case No. 04-51612-SCS, Docket Entry No.

68. Thus, Ruby asserts that Mr. and Mrs. Silvus undervalued their property, and accordingly

understated the equity in that property, by $39,700.00. The original Application requested

the sum of $1,903.50 in compensation, plus $108.07 in expenses, for a total of $2,011.57.

At the hearing held on May 13, 2005, Ruby orally amended his Application to request the

reduced amount of $1,453.50 in compensation and $55.57 in expenses, for a total of

$1,509.07.[4]

Counsel for Mr. and Mrs. Silvus made an oral objection at the May 13, 2005, hearing,

asserting that she did not agree that quantum meruit was the correct method by which to

measure any compensation that Ruby might be entitled to receive. The Court heard

testimony from Ruby at that hearing[5] and admitted into evidence a Statement of the Trustee's

Services. The Court also heard arguments from the parties. The Court continued the matter

to June 10, 2005, for the Court to give its oral ruling after having the opportunity to review

the evidence and the Silvuses' objection.

At the hearing on June 10, 2005, the Court noted that the Chapter 13 plan in the case

---

[4] At the May 13, 2005, counsel for the United States Trustee stated that the United States Trustee had requested a reduction in the amount sought in the Application. Both the United States Trustee and Ruby agreed upon the reduced amount currently sought.

[5] Ruby's testimony at the May 13, 2005, hearing essentially restated the information contained regarding the procedural history of the case and other information already within the Court's records.

had not been confirmed. Upon inquiry, counsel for the Chapter 13 Trustee stated that

outstanding issues existed as to whether the liquidation analysis set forth in 11 U.S.C. §

1325(a)(4) would be satisfied as well as whether the debtors would be objecting to any

unsecured claims. Thus, the Court continued the matter to the July 8, 2005, to be heard with

the hearings on the Applications in the Jurgensen and Sanders cases.

B.

*Donald E. & Rosemarie Jurgensen, Case Number 04-51841-SCS*

Donald E. and Rosemarie Jurgensen filed under Chapter 7 of the Bankruptcy Code

on July 1, 2004. David R. Ruby was appointed Chapter 7 Trustee. On October 6, 2004,

Ruby requested that the Clerk of the Bankruptcy Court send a notice to all creditors and

parties in interest that there may be assets available for distribution in the Jurgensens' case.

On October 7, 2004, Ruby filed an Application to Employ Evelyn Wilby as Real Estate

Agent and Motion to Grant Access to Estate Property. Before an order could be entered

regarding that application and motion, the Jurgensens converted their case to one under

Chapter 13 on October 13, 2004.

Ruby filed an objection to the confirmation of the Jurgensens' original Chapter 13

plan as well as a Motion to Reconvert the Jurgensens' case to one under Chapter 7, both of

which were later settled by the parties. The Jurgensens filed a modified Chapter 13 plan,

which was confirmed by the Court by an order entered on February 16, 2005.

Ruby filed his initial proof of claim for administrative expenses on November 8, 2004,

8

in which he asserted an administrative priority claim of $3,028.34, itemized as: $1,438.50

for "Quantum meruit value of services provided by Trustee"; $89.84 for "Trustee Expenses";

and $1,500.00 for "Quantum meruit value of services provided by real estate agent."[6]  His

request for fees was reduced to a total of $1,026.59 (itemized as $988.50 for compensation

and $38.09 for reimbursement of expenses), according to his Application for Administrative

Expense, which he filed in the Jurgensen case on June 6, 2005.  In that Application, Ruby

asserts that the Jurgensens undervalued their residential real property in their bankruptcy

schedules by claiming a value of $109,000.00, but that the value of the property, according

to a comparative market analysis performed by Evelyn Wilby, is more accurately stated at

$137,000.00.  Thus, Ruby asserts that the Jurgensens undervalued their property, and thus

understated the equity in the property, by $28,000.00.

C.

*Joey B. & Lisa A. Sanders, Case Number 04-51549-SCS*

Joey B. and Lisa A. Sanders filed under Chapter 7 of the Bankruptcy Code on May

26, 2004.  David R. Ruby was appointed Chapter 7 Trustee.  On August 5, 2004, Ruby

requested that the Clerk of the Bankruptcy Court send a notice to all creditors and parties in

interest that there may be assets available for distribution in the Sanderses' case.  On August

6, 2004, Ruby filed an Application to Employ Evelyn Wilby as Real Estate Agent and Motion

---

[6] Ruby amended his proof of claim in the Jurgensen case on June 6, 2005, and now
asserts a claim in the amount of $1,026.59, which is the amount sought in his Application for
Administrative Expense in that case.

to Grant Access to Estate Property. The Sanderses contested neither the application

regarding the employment of the real estate agent nor the motion to permit the real estate

agent to have access to their property, and an order was entered on August 18, 2004, granting

both the application and motion.

Prior to that order being entered, however, the Sanderses filed a Motion to Convert

their case to one under Chapter 13. That motion contained several deficiencies, however,

and the case was not converted until the deficiencies were corrected. The order granting the

amended Motion to Convert was entered on August 30, 2004.

Following the conversion and the filing by the debtors of their Chapter 13 plan, Ruby

filed an objection to the confirmation of that plan. The objection was sustained by the Court

at a hearing held on January 14, 2005. Ruby also objected to the Sanders modified Chapter

13 plan; that objection was later settled by the parties. In the interim, Ruby objected to the

Sanderses' claim of exemptions. Ruby had filed an objection to the debtors' exemptions

prior to the conversion of the case, which was mooted by the conversion. The objection to

exemptions filed by Ruby in the converted case was also settled by the parties.

Ruby filed his initial proof of claim requesting administrative expenses on October

1, 2004, in which he asserted an administrative priority claim of $2,992.25, itemized as:

$1,387.50 for "Quantum meruit value of services provided by Trustee"; $104.75 for "Trustee

fees"; and $1,500.00 for "Quantum meruit value of services provided by real estate agent."[7]

---

[7] Ruby amended his proof of claim in the Sanders case on June 6, 2005, and now asserts a
claim in the amount of $990.50, which is the amount sought in his Application for

His request for fees was reduced to $990.50 (itemized as $937.50 for compensation and $53.00 for reimbursement for expenses), according to his Application for Administrative Expense filed in the Sanders case on June 6, 2005. In the Application, Ruby argues that the Sanders undervalued their residential real property in their bankruptcy schedules when they asserted a property value of $35,000.00. Ruby asserts instead that value of the property is actually $80,000.00 per the comparative market analysis performed by Evelyn Wilby. Thus, Ruby asserts that the Sanders undervalued their property, and accordingly understated the equity in the property, by $45,000.00.

### D.

*Steve S. Lee, Case Number 04-52108-SCS*

Steve S. Lee filed under Chapter 7 of the Bankruptcy Code on July 30, 2004. David R. Ruby was appointed Chapter 7 Trustee. On October 15, 2004, Ruby requested that the Clerk of the Bankruptcy Court send a notice to all creditors and parties in interest that there may be assets available for distribution in the Lee case. Also on October 15, 2004, Ruby filed an Application to Employ Evelyn Wilby as Real Estate Agent and Motion to Grant Access to Estate Property. Lee contested neither the application regarding the employment of the real estate agent nor the motion to permit the real estate agent to have access to his property, and an order was entered on October 27, 2004, granting that application and motion. Lee subsequently converted his case to one under Chapter 13 on November 2, 2004.

---

Administrative Expense in that case.

Ruby objected to confirmation of the Chapter 13 plan in the Lee case, which was settled by the parties. On April 15, 2005, an order was entered confirming Mr. Lee's Chapter 13 plan.

Ruby filed his initial proof of claim requesting administrative expenses on December 7, 2004, in which he asserted an administrative priority claim of $2,857.61, itemized as $1,260.00 for "Quantum meruit value of services provided by Trustee;" $97.61 in trustee expenses; and $1,500.00 for "Quantum meruit value of services provided by real estate agent."[8] His request for fees was reduced to a total of $855.86 (itemized as $810.00 for compensation and $45.86 for reimbursement of expenses), according to his Application for Administrative Expense, which was filed on June 6, 2005. In the Application, Ruby claims that Lee undervalued his residential real property in his bankruptcy schedules by assigning a value of $110,600.00 to that property. Ruby asserts, however, that, according to a comparative market analysis of the property conducted by Evelyn Wilby of Reliance Realty, Inc., the value of the property is $155,000.00. Thus, Ruby argues that Lee undervalued his property, and accordingly understated the equity in that property, by $44,400.00.

---

[8] Ruby amended his proof of claim in the Lee case twice. The first amended proof of claim was filed on March 8, 2005, in which Ruby asserted an administrative claim of $1,357.61 (itemized as $1,260.00 for "Quantum meruit value of services provided by Trustee" and $97.61 in trustee expenses). The second amended proof of claim was filed on June 6, 2005, and now asserts a claim in the amount of $855.86, which is the amount sought in his Application for Administrative Expense in the Lee case.

## III.

### ARGUMENTS

Ruby makes identical arguments in each of his Applications for Administrative Expense. Ruby secured comparative market analyses on the properties in each of the cases because he believed that the properties had "significantly higher value" than that listed by the debtors in their bankruptcy schedules. Based upon the comparative market analysis, he determined that the properties should be administered and liquidated in order to provide a distribution to the general unsecured creditors of each of the estates. Ruby argues in each of his Applications that:

> But for the pre-conversion efforts of the Former Trustee, this case would have been viewed as a no-asset case and general unsecured creditors would not be slated to receive any distribution. The Former Trustee's diligence and aggressiveness forced the Debtor to convert their case to a Chapter 13 case and to meet their responsibilities to their creditors through a Chapter 13 plan which properly valued the Property.

Ruby goes on to argue that he "performed valuable services benefiting [sic] the estate and general unsecured creditors and believes that he is entitled to *quantum meruit* compensation for services rendered during the Debtors' Chapter 7 case and for reimbursement of expenses in connection with those services." Ruby also argues that he is entitled to administrative priority claim treatment.

Additionally, at the hearing on May 13, 2005, on the Application for Administrative Expense in the Silvus case, Ruby argued that the failure of the debtors to list their residential real property at the proper value had the effect of forcing the work product and due diligence

that the debtors should be performing regarding valuing their property onto the Chapter 7

Trustee. To this extent, he argued that counsel for debtors in Chapter 7 cases were taking

this approach, in his view, to "hope to get a better deal" for their clients post-conversion.

Further, he asserted that he "spent more time than normal" working on the Silvuses' Chapter

7 case.

Counsel for Mr. and Mrs. Silvus argued at the May 13, 2005, hearing that, in a

Chapter 7 case that remained such, the Chapter 7 Trustee would receive funds only if a final

report were filed. Citing an unnamed case, counsel argued that a Chapter 7 Trustee should

receive payment in a Chapter 13 case only if the Chapter 7 Trustee performed work that

ultimately led to payments to the creditors in the Chapter 13 case, but in no event should the

Chapter 7 Trustee receive more compensation than he would have received had the case

continued as a Chapter 7 case.

Counsel for the United States Trustee stated at the May 13, 2005, hearing that the

United States Trustee supported Ruby's Application in the Silvus case because, in their view,

the balance of the equities supports the payment, particularly in light of the inaccuracies on

the debtors' schedules concerning their joint debts.

At the beginning of the July 8, 2005, hearings, Ruby and Santoro stated that, after

negotiations which also involved the Office of the United States Trustee, they had reached

a proposed resolution as to the allowed amount of compensation and expenses that Ruby

would receive and the basis upon which that compensation would be paid in the Jurgensen

14

and Sanders cases; an agreement was not reached in the Silvus case. Counsel for the United

States Trustee stated that, while the United States Trustee supported an award of

compensation under the unique circumstances of these cases, she also noted that ultimately,

it is the Court's decision whether this type of compensation is ever appropriate.

The resolution of the Jurgensen and Sanders cases was based upon several factors.

The first factor, that of quantum meruit, would be subject to a reasonableness standard.

Second, the Chapter 13 Trustee would examine the actual out-of-pocket costs incurred by the

Former Chapter 7 Trustee. Finally, the specific circumstances surrounding each case would

be examined to determine a balance of the equities as well as the reality of the benefit gained

by the estate as a result of the Former Chapter 7 Trustee's work.[9]

At the August 12, 2005, hearing in the Lee case, Ruby reiterated his argument from

his Application. He also stated that he had received communication from Mr. Lee's counsel,

who could not attend the hearing due to a scheduling conflict, that he did not object to the

payment of compensation and reimbursement of fees to the Former Chapter 7 Trustee.

Counsel for the United States Trustee stated that he had no objection to allowing "some"

compensation to trustees in situations such as those before the Court. Santoro stated that he

supported an award of compensation to Ruby on a quantum meruit basis.

Ruby submitted Supplemental Motions for Allowance and Payment of Administrative

---

[9] According to this Court's review, there are at least eleven Applications for
Administrative Expenses currently pending before it in the Norfolk and Newport News divisions,
including the cases that are the subject of this opinion.

15

Priority Expense Claim ("Supplemental Motions") in the Jurgensen and Sanders cases on

August 1, 2005, and in the Lee case on August 9, 2005. The Supplemental Motions are

nearly identical and state that the original Applications contain the resolution reached by

Ruby, Santoro, and the Office of the United States Trustee regarding the reduction of his

proposed compensation and expenses. Specifically, Ruby notes that the amendment of the

expenses sought related to the reduction of fees for his travel time and expenses for mileage

related to his conduction of the Section 341 meeting of creditors held in each of the cases.

Ruby reiterated that he "believes that, but for the pre-conversion efforts of the Former

Trustee, the case would have been viewed as a no-asset case and general unsecured creditors

would not be slated to receive any distribution." *See* Supplement to Motion for Allowance

and Payment of Administrative Priority Expense Claim by David R. Ruby, filed August 1,

2005, Case No. 04-51841-SCS, Docket Entry No. 60; Supplement to Motion for Allowance

and Payment of Administrative Priority Expense Claim by David R. Ruby, filed August 1,

2005, Case No. 04-51549-SCS, Docket Entry No. 67; Supplement to Motion for Allowance

and Payment of Administrative Priority Expense Claim by David R. Ruby, filed August 9,

2005, Case No. 04-52108-SCS, Docket Entry No. 60.

Ruby also states in the Supplemental Motion that, as to the Jurgensen case, he

originally sought compensation in the amount of $1,438.50 and fees of $89.84. He further

states that even if he were paid his reduced fee of $988.50 and expenses of $38.09, general

unsecured creditors would still receive a 40% distribution; that distribution would be 42%

16

if Ruby's claim was not paid.

Regarding the Sanders case, Ruby states that he originally sought compensation of $1,387.50 and fees in the amount of $104.75. He argues that, even if he were paid his reduced fee of $937.50 and reimbursed his fees in the amount of $53.00, general unsecured creditors would still receive an 88% distribution on their claims; that distribution would increase to 91% if his claim was not paid.

In his Supplemental Motion in the Lee case, Ruby states that he originally sought compensation in the amount of $1,260.00 and reimbursement of $97.61 for his expenses. He further states that, if his reduced fees and expenses were paid, general unsecured creditors would still receive a 71% distribution. General unsecured creditors would receive 73% if Ruby's claim were not paid.

On August 4, 2005, Santoro filed a report in all of the cases in which he noted the percentages of the pay outs in each of the cases if Ruby's claims were paid, as well as the percentages of the pay outs if Ruby's claims were not paid. In the Silvus case, the report notes that general unsecured creditors would be paid 100% of their claims regardless of whether Ruby's claim is paid. In the Jurgensen case, those creditors would receive a 40% pay out if Ruby's claim is paid, versus a 42% pay out if his claim is not paid. General unsecured creditors in the Sanders case would receive an 88% pay out if Ruby's claim is paid, but would receive 91% if Ruby's claim is not paid. Finally, those creditors in the Lee case would receive 71% in the event that Ruby's claim is paid, versus 73% if his claim is not

17

paid.

## IV.

## CONCLUSIONS OF LAW

Before addressing the issue of whether Ruby is entitled to an award of fees, it is

appropriate for this Court to address its duty to review fee applications. As alluded to by

counsel for the United States Trustee, this Court remains obligated to independently review

the validity and reasonableness of fee applications regardless of proposed resolutions or the

lack of objections. As previously stated by this Court:

> The Court's responsibility in awarding fees is great, as each creditor
> individually has little reason to object to requested compensation due to the
> costs incidental to the objection which it would incur compared to the possible
> amount of recovery from the estate. . . . [T]he ultimate responsibility lies with
> the Court.

*In re Elder*, 321 B.R. 820, 825 (Bankr. E.D. Va. 2005) (quoting *In re Great Sweats, Inc.*, 113

B.R. 240, 242 (Bankr. E.D. Va. 1990)). The obligation to review requests for payments of

fees derives from "from the court's inherent obligation to monitor the debtor's estate and

serve the public interest." *See Shareholders v. Sound Radio, Inc.*, 109 F.3d 873, 881 (3d Cir.

1997) (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994)) ("[T]he

bankruptcy court has a *duty* to review fee applications, notwithstanding the absence of

objections by the . . . creditors, or any other interested party, a duty which the Code does not

expressly lay out but which we believe derives from the court's inherent obligation to

monitor the debtor's estate and to serve the public interest."); *see also In re Courtois*, 222

B.R. 491, 494 (Bankr. E.D.N.C. 1998) (quoting *In re Yates*, 217 B.R. 296, 300 (Bankr. N.D.

Okla. 1998)) (finding that "[s]uch duty to independently review professional fee applications

in Chapter 13 cases becomes a particularly important supervisory function of the court when

'neither the debtors nor most creditors have an incentive to object to attorney's fees.'").

Further, Section 105(a) of the Bankruptcy Code gives the Court broad authority to address

or raise an issue *sua sponte*:

> No provision of this Title providing for the raising of an issue by a party in
> interest shall be construed to preclude the court from, sua sponte, taking any
> action or making any determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2004). *See also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d at 841

(finding that Section 105(a) provides "clear and compelling authority" to *sua sponte* review

fee and expense applications, particularly in light of the discretionary language of Section

330(a)(1), which provides that the court "*may* award" reasonable compensation to a trustee

or other professional employed by the estate).

In a similar vein, the Fourth Circuit has held, in the context of approving

compensation for debtor's counsel, that Section 329 of the Bankruptcy Code and Federal

Rule of Bankruptcy Procedure 2017 "'furnish the court with express power to review

payments to attorneys for excessiveness.'" *Burd v. Walters (In re Walters)*, 868 F.2d 665, 667

(4th Cir. 1989) (citing *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987)). Also, it should be

noted that "a request for administrative expenses, unlike a proof of claim, is not 'deemed

allowed' in the absence of an objection and does not constitute *prima facie* evidence of the

19

validity and amount of the request." *In re Morgan*, 48 B.R. 148, 149 (Bankr. D. Md. 1985)

(quoting *In re B & W Tractor Co.*, 38 B.R. 613, 616-17 (Bankr. E.D.N.C. 1984).

Section 503 permits the payment of administrative expenses, as a cost of the

administration of the bankruptcy estate, to trustees or other professionals within the bounds

of Section 330. 11 U.S.C. § 503(b)(2). Section 330 provides that a trustee may be awarded

"reasonable compensation for actual, necessary services rendered . . . and reimbursement for

actual, necessary expenses." *Id.* §§ 330(a)(1)(A)–(B). In determining reasonable

compensation, the Bankruptcy Code provides the following list of guiding factors:

> [T]he court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including—
> - (A)   the time spent on such services;
> - (B)   the rates charged for such services;
> - (C)   whether the services were necessary to the administration of, or
>       beneficial at the time at which the service was rendered toward
>       the completion of, a case under this title;
> - (D)   whether the services were performed within a reasonable
>       amount of time commensurate with the complexity, importance,
>       and nature of the problem, issue, or task addressed; and
> - (E)   whether the compensation is reasonable based on the customary
>       compensation charged by comparably skilled practitioners in
>       cases other than cases under this title.

*Id.* §§ 330(A)–(E).

The amount of compensation that a trustee may receive is not without limitation,

however. Section 326 expressly limits the amount of compensation a trustee may receive in

a case; those amounts differ dependent upon the Chapter of the case. In a Chapter 7 case,

a trustee's compensation cannot exceed:

> 25 percent on the first $5,000 or less, 10 percent on any amount in excess of
> $5,000 but not in excess of $50,000, 5 percent on any amount in excess of
> $50,000 but not in excess of $1,000,000, and reasonable compensation not to
> exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys
> disbursed or turned over in the case by the trustee to parties in interest,
> excluding the debtor, but including holders of secured claims.

*Id.* § 326(a). The compensation of a Chapter 13 Trustee is likewise limited by Section 326,

which provides for "reasonable compensation . . . payable after the trustee renders such

services, not to exceed five percent upon all payments under the plan." *Id.* § 326(b).

The Bankruptcy Code attempts to address the issue of multiple trustees in one

bankruptcy case: "If more than one person serves as trustee in the case, the aggregate

compensation of such persons for such service may not exceed the maximum compensation

prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be."

*Id.* § 326(c). The language of Section 326 becomes the source of controversy when a former

Chapter 7 Trustee seeks compensation in a case that is converted to one under Chapter 13

prior to the disbursement of any monies by the trustee in the Chapter 7 case.

Several theories exist regarding whether a former Chapter 7 Trustee in a converted

case is entitled to compensation when he has made no distribution to the creditors, including

that of quantum meruit, which is posited by Ruby as the basis for his recovery of

compensation and expenses. Other theories include the "multiple" or "composite" trustee

theory; the theory that the plain language of Section 326(a) precludes such an award; the

theory that the Chapter 13 case should be treated as separate and distinct from the Chapter

7 case; the "constructive disbursement" theory; and the theory that fees may be awarded

21

pursuant to Section 105 of the Bankruptcy Code.

A.

*"Multiple" or "Composite" Trustee Theory*

The case of *In re Rodriguez*, 240 B.R. 912 (Bankr. D. Colo. 1999), aptly explains the "multiple" or "composite" trustee theory, which focuses on the statutory cap language in Section 326. In that case, the former Chapter 7 Trustee sought the allowance of an administrative expense for fees and out-of-pocket costs for time he spent investigating the debtors' financial situation and in filing an adversary proceeding objecting to the debtors' discharge prior to the debtors converting their case. *Id.* at 913. The Court found that, while the Bankruptcy Code espoused a clear policy that trustees be adequately and fairly compensated, Congress had also sought to limit the total compensation to trustees. *Id.* at 915 (citing *In re Arius, Inc.*, 237 B.R. 843 (Bankr. M.D. Fla. 1999)). In so finding, however, the Court rejected a strict application of Section 326(a), which would preclude a former Chapter 7 Trustee from receiving compensation if a Chapter 7 case converted prior to any disbursement being made by him or her. The court stated that those courts strictly applying Section 326(a) improperly read the final phrase of Section 326(a) (which references the disbursement of moneys by the trustee) "to be limited to the person who served as trustee while the bankruptcy case was pending under chapter 7." *Id.* at 914 (citing *In re Frost*, 214 B.R. 295 (Bankr. S.D.N.Y. 1997); *In re Fischer*, 210 B.R. 467 (Bankr. D. Minn. 1997); *In re Berry*, 166 B.R. 932 (Bankr. D. Or. 1994)).

22

Instead, the court in *Rodriguez* interpreted the final phrase of Section 326(a) as referring to a generic, "composite" trustee and to an aggregate of the distributions made by any trustee at any point during the administration of the case. *Id.* at 915. Thus, the total aggregate compensation that a Chapter 7 Trustee could receive would be limited by the cap set forth in Section 326(a) as applied to the aggregate disbursements made by any trustee that served in the case. *Id.* at 915-16. The court concluded that, because the case had been converted and both the Chapter 7 and Chapter 13 Trustees had served during the pendency of the case, Section 326(c) should be triggered to limit the ultimate compensation that the former Chapter 7 Trustee could receive. *Id.* at 914-15 (citing *In re Arius*, 237 B.R. at 846-47). Thus, the former Chapter 7 Trustee could receive up to the amount that remains after deducting the fee for the Chapter 13 Trustee. *Id.* at 916. To do otherwise, the court reasoned, would "penalize hardworking interim trustees whose services have contributed to the administration of the bankruptcy estate but who have not actually distributed funds." *Id.* at 915. In support of this conclusion, Judge Matheson cited to the legislative history of Section 326(c):

> Subsection (c) provides a limitation not found in current law. Even if more than one trustee serves in the case, the maximum fee payable to all trustees does not change. For example, if an interim trustee is appointed and an elected trustee replaces him, the combined total of the fees payable to the interim trustee and the permanent trustee may not exceed the amount specified in this section. Under current law, very often a receiver receives a full fee and a subsequent trustee also receives a full fee. The resultant "double-dipping," especially in the cases in which the receiver and the trustee are the same individual, is detrimental to the interest of the creditors, and needlessly increases the cost of administering bankruptcy estates.

23

*Id.* at 914 fn.1 (citing H.R. Rep. No. 95-595, at 327-28, *reprinted in* 1977 U.S.C.C.A.N.

5963, 6283-84; S. Rep. No. 95-989, at 38, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5824).

The court expressly rejected the quantum meruit argument. While acknowledging that

Section 330 of the Bankruptcy Code essentially mandated a quantum meruit approach to

compensation of trustees by virtue of the "reasonableness" component included in that

section, the court concluded that the statutory cap contained in Section 326 could not be

disregarded. *Id.* at 914 (citing *In re Moore*, 235 B.R. 414 (Bankr. W.D. Ky. 1999)). In so

concluding, the court stated that:

> [W]e must recognize the explicit efforts of Congress to place a cap on the
> administrative expenses to be born by a bankruptcy estate as compensation for
> services by the various trustees. This Court cannot accept the proposition that
> it can ignore the explicit language of section 326 under the rubric of allowing
> fees on a quantum meruit basis.

*Id.*

Finally, the theory that the Chapter 13 case should be treated as separate and distinct

from the Chapter 7 case was also rejected in *Rodriguez*. *Id.* at 915 (citing *Gill v. Wittenburg*

*(In re Fin. Corp. of Am.)*, 114 B.R. 221 (9th Cir. B.A.P. 1990), *aff'd and remanded*, 946 F.2d

689 (9th Cir. 1991); *In re Yale Mining Corp.*, 59 B.R. 302 (Bankr. W.D. Va. 1986)). In

reaching this conclusion, the court highlighted several sections of the Bankruptcy Code,

including Sections 301, 302(a), 303(b), and 348(a), to demonstrate that, regardless of a

conversion, the filing date remains the same, and that a conversion is accomplished not by

the filing of a new case but by the filing of a motion in an existing case. Thus, for the

purposes of the Bankruptcy Code and specifically Section 326, only one bankruptcy "case"

is commenced by the filing of the original petition. *Id.*

### B.

### *Strict Interpretation of Section 326*

As the court in *Rodriguez* pointed out, several courts have precluded a former Chapter

7 Trustee from recovering compensation in converted cases based upon a strict interpretation

of the language in Section 326(a). Courts that strictly interpret Section 326(a) have

concluded that a former Chapter 7 Trustee must have either disbursed or turned over monies

in order to be eligible to receive compensation in a converted case. *In re Fischer*, 210 B.R.

467, 469 (Bankr. D. Minn. 1997); *see also In re Woodworth*, 70 B.R. 361, 362-63 (Bankr.

N.D.N.Y. 1987) (finding that the trustee's activities were minimal, as he did not marshal or

safekeep any assets nor did he liquidate anything). The court in *Fischer* so concluded by

finding that "when Congress has spoken as clearly as it has, it is inappropriate to go beyond

the statute in order to achieve what is perceived as fairness." *In re Fischer*, 210 B.R. at 469.

The court in that case pointed out:

> Being a chapter 7 trustee is a difficult and risky business. While the trustee is
> entitled to a statutory part of the filing fee, currently $60.00, that amount rarely
> compensates the trustee for the time spent on the case. Trustees can only hope
> that by achieving certain efficiencies by way of volume and by making a
> substantial fee in an occasional case, that the work of a trustee will be
> profitable. One of the risks that trustees take is that even if there are
> nonexempt assets in the case, that the debtor will convert the case to chapter
> 13 or obtain dismissal of the case short of final administration. This is one of
> those cases.

*Id.*

Also adopting this theory was the court in *In re Murphy*, 272 B.R. 483 (Bankr. D.

Colo. 2002). Noting that, despite what would otherwise qualify as reasonable compensation

under Section 330(a), the *Murphy* court concluded that the plain language of Section 326(a)

commanded that Chapter 7 Trustees should receive only a percentage of those funds actually

disbursed, and that nothing in the statutory scheme indicated any different result in cases that

had been converted from Chapter 7 to Chapter 13 prior to any disbursements being made.

*Id.* at 485.  The court reasoned that "trustees are expected to perform the essential tasks of

scrutinizing a debtor's assets, schedules, and conduct," and often, the trustee will determine

that there are no assets to collect and distribute.  In those cases, the Chapter 7 Trustees are

limited under Sections 326 and 330 to compensation in the form of a small portion of the

debtor's filing fee.  *Id.* at 486.  Thus, "[g]iven this reality, it is anomalous to project that

Congress intended an unstated exception to the often harsh workings of section 326(a) to

apply in Chapter 7 cases that convert to Chapter 13." *Id.* at 486 fn.8.

The court in *In re Celano*, No. CIV.A. 01-310, 2001 WL 1586778 (E.D. La. Dec. 7,

2001), *aff'd*, 54 Fed. Appx. 591 (5th Cir. 2002) (unpublished), refusing to impute post-

conversion disbursement upon a former Chapter 7 Trustee in a case that was converted to a

Chapter 11 case but dismissed on the debtors' motion prior to any distribution of funds, also

followed the plain meaning rule.  *Id.* at *1, *3.  The court so concluded based upon the

application of the plain language of Section 326(a), which the court found to be the

requirement under case law in the Fifth Circuit. *Id.* at *3 (citing *Pritchard v. United States Trustee (In re England)*, 153 F.3d 232 (5th Cir. 1998)). Under the plain language of Section 326(a), the court found, a Chapter 7 Trustee cannot be compensated based on post-conversion distributions. *Id.* The court focused its analysis on the phrase "disbursed or turned over by the trustee" as used in Section 326(a). Noting that phrase was not defined in the Bankruptcy Code, the court turned to the dictionary definition of disburse, which means "to pay out." Thus, the court concluded that the trustee would actually have to distribute funds in order to be compensated. *Id.* at *4 (citations omitted). In finding that the former Chapter 7 Trustee in that case could not be awarded any compensation, the court stated that, while this may occasionally lead to an unfair result, Congress, not the court, is the proper venue in which a remedy could be fashioned. *Id.* at *3 (citing *In re England*, 153 F.3d at 237) ("Congress's decision to set a maximum limit on trustee compensation based only upon moneys disbursed may arguably lead to a trustee receiving inadequate compensation in a particular case, but that is a problem for Congress to remedy.").

The plain language approach to interpreting Section 326(a) was also addressed in *In re Meadows*, No. 7-97-02526, 2003 WL 477428 (Bankr. W.D. Va. Jan. 6, 2003). In *Meadows*, the Chapter 7 Trustee sought a commission when the debtor's case, which had originally been closed as a no-asset case, was subsequently reopened after the trustee discovered assets. After the case was reopened, the trustee liquidated assets and applied for his fees. The court granted his fees, but no disbursement was authorized because the order

27

was not based on Section 331, which governs interim compensation for trustees. When no

creditors submitted proofs of claim, the trustee filed a motion to disburse the funds, with the

first distribution to himself and the remainder to the debtor. *Id*. at *1. The court found that,

while the cases of *Fischer*, *Murphy*, and *Celano* were factually distinguishable and thus did

not supply controlling authority, the *Celano* case contained the legal basis upon which to find

that the trustee was not entitled to compensation. In choosing to follow the plain meaning

rule, the court, like in *Celano*, noted that Congress should be tasked with remedying any

inherent unfairness that might result in unusual circumstances such as the ones that court

faced. *Id*. at *1-2 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42

(1989); *In re Celano*, 2001 WL 1586778, at *3-4). The court flatly rejected applying Section

105(a) to award compensation to the trustee, finding that a remedy under Section 105(a) was

not available unless express statutory requirements otherwise applied. *Id*. at *2 (citing

*United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) ("bankruptcy courts do not have

the power 'to create substantive rights that are otherwise unavailable under applicable law,

or constitute a roving commission to do equity'"); *Mort v. Tennessee Student Assistance

Corp.*, 272 B.R. 181, 184 (W.D. Va. 2002) (same)).

Finally, the court in *Meadows* addressed those cases in which either a strict

application of Sections 326 and 330 had been eschewed or some other argument had been

advanced to find that compensating a Chapter 7 Trustee is proper, stating that those decisions

all sought to compensate a Chapter 7 Trustee for their diligent work in generating dividends

28

from estate property, regardless of intervening events that may have prevented disbursement. *Id.* at *2. Despite the fact that "[a]dequate compensation in each case would promote the goal of ensuring diligent attention to all cases," the court concluded that, "notwithstanding this court's conviction that neither equity nor the best interest of the administration of the Bankruptcy Code are served by denying [the trustee] compensation under § 326(a), the decision of Congress, as reflected in its statutory language, must be applied. Therefore . . . the court holds that [the trustee] is not entitled to receive statutory compensation under 11 U.S.C. § 326(a)." *Id.* at *3.

## C.

### *Separate and Distinct Cases Theory*

A third theory that has been advanced is to treat the Chapter 13 case as separate and distinct from the Chapter 7 case. By taking this approach, the courts hold, the limitation on trustee fees, and correspondingly the aggregation of fees if more than one person serves as trustee, is not triggered if a case converts. In *In re Yale Mining Corp.*, 59 B.R. 302 (Bankr. W.D. Va. 1986), the debtor filed under Chapter 11 but later converted the case to one under Chapter 7 of the Bankruptcy Code. The Chapter 11 Trustee sought commissions and reimbursement of expenses. *Id.* at 302. While acknowledging that Section 326(c) did not consider the effect of conversion on the compensation of the trustee serving under one chapter and the trustee that subsequently serves in the case under another chapter, the court drew upon the language regarding conversion in Section 1112 to conclude that the

29

conversion of a case results in two conceptually distinct cases.[10] *Id.* at 305. To this extent,

the court points out that a separate Order for Relief is issued in the converted case. *Id.* at 306

(citing 11 U.S.C. § 348(a)). The conversion also establishes new deadlines for assuming or

rejecting executory contracts and, more important, terminates the services of the trustee in

the pre-conversion chapter of the case. *Id.* Thus, the court concluded that fees could be

awarded to both the former Chapter 11 Trustee and the Chapter 7 Trustee without regard to

any aggregate cap imposed by Section 326(c), stating:

> [T]he duties of a Trustee are different in a case under Chapter 11 than those
> of a Trustee in a case under Chapter 7. . . . Each Trustee has expended
> necessary time and performed his or her fiduciary functions and accounts for
> their stewardship and should be entitled to compensation for such services
> under § 326(a) without reference to the other.

*Id.* at 305.

The case of *Gill v. Wittenburg (In re Fin. Corp. of Am.)*, 114 B.R. 221 (9th Cir. B.A.P.

1990), *aff'd and remanded*, 946 F.2d 689 (9th Cir. 1991), also adopted the "separate and

distinct case" approach. The bankruptcy in that case was commenced as one under Chapter

11. The Chapter 11 Trustee moved to convert the case to one under Chapter 7, which motion

was granted. The Chapter 11 Trustee was later appointed to serve as Chapter 7 Trustee of

the case. As the Chapter 11 Trustee, he turned over to himself, as Chapter 7 Trustee,

approximately $1.5 million. He then sought, as Chapter 11 Trustee, to recover fees based

---

[10] Subsections (a) and (b) of Section 1112 both include language referring to the
conversion of "a case under this chapter to a case under chapter 7 of this title." 11 U.S.C. §§
1112(a)–(b).

upon the monies turned over to himself as Chapter 7 Trustee. *Id.* at 222. In relying on the

reasoning and analysis of *Yale Mining Corp.*, the Bankruptcy Appellate Panel stated that the

Chapter 11 and Chapter 7 Trustee fees should be assessed independently of each other by

virtue of the fact that the services that each type of trustee provides are distinct. While a

Chapter 11 Trustee carries on the business of the estate, the Chapter 7 Trustee is tasked with

liquidating the bankruptcy estate; yet, "both are valuable to the estate." *Id.* at 225 (citing *In

re Yale Mining Corp.*, 59 B.R. at 305). On the issue of whether the statutory cap under

Section 326(c) applies, the court stated that a bankruptcy court "may exercise its discretion

to award less than the statutory maximum of Section 326(a)" when the Chapter 7 Trustee and

the Chapter 11 Trustee are the same person. *Id.* Along these lines, "Congress presumably

addressed its concerns about double compensation for trustees in Subsection 326(c), which

prevents multiple trustees under the same Chapter in a case from earning aggregate

compensation in excess of the limits stated in Section 326(a)." *Id.* at 226.

D.

*Constructive Disbursement Theory*

The "constructive disbursement" theory imputes the distributions made by the Chapter

13 Trustee upon the former Chapter 7 Trustee to calculate the latter's maximum fee. Unlike

*Rodriguez* and the "multiple" or "composite" trustee theory, however, the "constructive

disbursement" theory does not combine the fees of the trustees when applying the statutory

cap in Section 326(a). In *In re Hages*, 252 B.R. 789 (Bankr. N.D. Cal. 2000), the court noted

31

its general agreement with the reasoning and conclusion reached in *Rodriguez*, save the

portion that applied the Section 326(a) cap to the amount of compensation a former Chapter

7 Trustee could receive. *Id*. at 793. The court noted that debtors often convert their Chapter

7 cases to ones under Chapter 13 because the Chapter 7 Trustee has either uncovered assets

or taken an action adverse to the debtors and stated that, regardless of whether the Chapter

7 Trustee turns over cash to the Chapter 13 Trustee upon conversion, "the chapter 7 trustee

turns over an estate that must generate distributions to creditors under a chapter 13 plan that

are equal to or greater than they will receive in Chapter 7." *Id*. at 794 (citing 11 U.S.C. §

1325(a)(4)).    Thus, the court reasoned that leaving the former Chapter 7 Trustee

uncompensated would serve as a disincentive to Chapter 7 Trustees to work to increase the

value of the estate for the benefit of the creditors. *Id*.

In determining that the Section 326(a) cap did not apply, the *Hages* court cited several

problems that would result were that section to apply. First, the court notes that the more

value added to the estate by the Chapter 7 Trustee, the less compensation he would receive

post-conversion. *Id*. at 795-96. Second, the court points to an inconsistent result between

converted cases where more than one person serves as a trustee, in which the cap would

apply, versus those converted cases where the same person is appointed as trustee, in which

the cap would not apply, which it interprets would be the result if the *Rodriguez* court's

reasoning were applied. *Id*. at 796 (citing *In re Rodriguez*, 240 B.R. 912, 914 fn.1 (Bankr.

D. Colo. 1999)).

Instead, the *Hages* court reads the phrase "trustee in the case" in Section 326(c) as referring not to the case as a whole, but to the "case under chapter 7" (or Chapter11, 12, or 13). Reading the statute in this manner led the court to conclude that Section 326(c) is no longer applicable after a case converts because the limitations apply only if more than one person serves as a trustee when the bankruptcy case is under a particular Chapter of the code. *Id.* at 796 (citations omitted). In support of this conclusion, *Hages* cites to Sections 326, 330, and 331 to demonstrate that Congress set forth precise formulas and guidelines for awarding compensation to trustees, and given the context of these provisions, "it is highly unlikely that Congress intended the capricious result" of limiting a former Chapter 7 Trustee's compensation at the expense of the compensation due the Chapter 13 Trustee. *Id.* at 796-97. Finally, citing *Gill v. Wittenburg (In re Fin. Corp. of Am.)*, 114 B.R. 221 (9th Cir. B.A.P. 1990), the court agreed that the separate functions performed by the trustees under the different chapters of the Bankruptcy Code eliminated any double-dipping that could occur. *In re Hages*, 252 B.R. at 797 (citing *In re Fin. Corp. of Am.*, 114 B.R. at 224-25). *But see In re Celano*, No. CIV.A. 01-310, 2001 WL 1586778 (E.D. La. Dec. 7, 2001), *aff'd*, 54 Fed. Appx. 591 (5th Cir. 2002) (rejecting the "constructive disbursement" theory in favor of applying the plain meaning of the statute).

E.

*Compensation Based Upon Section 105*

Another theory that favors compensation of former Chapter 7 Trustees is found in *In*

33

*re Ferris*, No. 99-13328, 2000 WL 877038 (Bankr. N.D. Cal. June 11, 2000), and *In re*

*Owens*, No. 99-11881, 2000 WL 1672331 (Bankr. N.D. Cal. Nov. 2, 2000), two virtually

identical decisions in which Judge Jaroslovsky awarded compensation to former Chapter 7

Trustees based on the court's powers under Section 105(a).[11]  In so holding, the court found

that a literal reading of the Bankruptcy Code did not forbid compensation to a former Chapter

7 Trustee who made no distributions to creditors prior to the conversion of the cases, but

rather, that the Bankruptcy Code was silent as to compensation in this situation. *In re Owens*,

2000 WL 1672331, at *1; *In re Ferris*, 2000 WL 877038, at *1.  Likening the situation to one

where the Ninth Circuit Court of Appeals found that, despite the Bankruptcy Code's failure

to provide for payment of fees to a debtor's counsel in a Chapter 7 case, such fees should be

allowed because the omission of such a provision was a "mistake" and policy considerations

favored allowing such compensation, so also Judge Jaroslovsky found compensation was

favored in *Ferris* and *Owens*. *In re Owens*, 2000 WL 1672331, at *1; *In re Ferris*, 2000 WL

877038, at *1 (both citing *United States Trustee v. Garvey, Schubert & Barer (In re Century*

*Cleaning Servs., Inc.)*, 195 F.3d 1053, 1060 (9th Cir. 1999)).

    Judge Jaroslovsky placed an equal amount of emphasis on the argument that equitable

concerns favored compensating the former Chapter 7 Trustees, who, the court found,

_____

    [11] This Court notes that the Westlaw versions of both *Ferris and Owens* bear the legend
that the opinions "ha[ve] no value as precedent and [are] not intended for publication."  The
court in *In re Hages*, which also cites to the *Ferris* decision, notes that it contacted Judge
Jaroslovsky, who confirmed that the legend on *Ferris* was incorrect and was to be removed; thus,
the case could be cited. *In re Hages*, 252 B.R. 789, 795 fn.6 (Bankr. N.D. Cal. 2000).

completed their jobs "diligently and effectively." *In re Owens*, 2000 WL 1672331, at *1; *In re Ferris*, 2000 WL 877038, at *2. Citing Section 105(a), Judge Jaroslovsky concluded, "When the Bankruptcy Code does not specifically forbid compensation, *Century Cleaning* makes it clear that the court should do what is right, just, and consistent with the intent of Congress and the policies underlying the Bankruptcy Code. Statutory justification lies in § 105(a), if nowhere else." *In re Owens*, 2000 WL 1672331, at *2; *In re Ferris*, 2000 WL 877038, at *2.

F.

*Quantum Meruit Theory*

Still other bankruptcy courts have relied upon the theory of quantum meruit in finding that compensation to a former Chapter 7 Trustee is not precluded in cases that are not fully administered. These courts, finding that Section 326 fails to address compensating former Chapter 7 Trustees, have reasoned that quantum meruit provides a basis for compensation if the trustee provided substantial services that benefitted the bankruptcy estate, but that such compensation should be a rare occurrence. *See, e.g.*, *In re Moore*, 235 B.R. 414, 416-17 (Bankr. W.D. Ky. 1999), *aff'd sub nom. Schilling v. Moore*, 286 B.R. 846 (W.D. Ky. 2002); *In re Washington*, 232 B.R. 814, 817 (Bankr. S.D. Fla. 1999). The court in *Moore* reached this conclusion by noting that, while Section 330 requires trustee compensation to be reasonable, Section 326 limits maximum compensation to the limits set forth therein. However, since Section 326 does not address fees for former Chapter 7 Trustees post-

35

conversion to Chapter 13, the court found quantum meruit to be the appropriate basis upon

which to award such compensation. *In re Moore*, 235 B.R. at 416. In so holding, that court

stated:

> [T]he chapter 7 trustee should be compensated on a quantum meruit basis in
> a case that is not fully administered, through no fault of the trustee, where the
> trustee performs substantial services that result in discovery of assets for the
> benefit of creditors. Conversely, the court does not envision windfalls for the
> trustee merely because a debtor converts for reasons unrelated to action by the
> trustee. We are further convinced that the effect of this decision will be to
> discourage a debtor's intentional concealment of assets and encourage a
> trustee's diligent discovery of assets.

*Id.* at 417. The *Moore* court went on to state that the award of fees to former Chapter 7

Trustees would be only on a case-by-case basis, and that "the burden is on the trustee to

establish entitlement to the fee through a detailed description of the services provided. The

application should demonstrate a nexus between the trustee's efforts and the uncovering of

assets." *Id.* In so holding, however, the court in *Moore* did not preclude the application of

the percentages set forth in Section 326(a) to determine reasonable compensation for the

former Chapter 7 Trustee. *Id.* The *Moore* court cited with approval the case of *In re Berry*,

166 B.R. 932 (Bankr. D. Or. 1994). The Bankruptcy Court in *Berry* also rejected a strict

interpretation of Section 326(a) in favor of compensating former Chapter 7 Trustees in cases

that have not been fully administered, finding that the performance of substantial services

that benefit the estate should be compensated. *Id.* at 934-35; *see also In re Washington*, 232

B.R. 814, 816 (Bankr. S.D. Fla. 1999) (finding that compensation on a quantum meruit basis

was appropriate if the services rendered, which benefitted the bankruptcy estate, were

reasonable and necessary).

The court in *In re Colburn*, 231 B.R. 778 (Bankr. D. Or. 1999), found, however, that it was unnecessary to look beyond the bounds of the Bankruptcy Code to award compensation to former Chapter 7 Trustees in converted cases, as that court found that the authority under which to award compensation to a trustee in those situations existed under Section 330 of the code, which establishes a standard of reasonableness in determining trustee compensation. *Id.* at 784 fn.7. Similar to the courts in *Moore*, *Berry*, and *Washington*, the court found that Section 326(a) did not preclude compensation to a former Chapter 7 Trustee in the instant circumstances and thus did not impose maximum limitations when determining compensation under Section 330 to the former Chapter 7 Trustees. *Id.* at 782-83. The court explained also that, in its view, Section 326(c) also did not serve to limit former Chapter 7 Trustees from receiving compensation in converted cases. According to that court, "Section 326(c) was designed to solve a perceived problem in liquidating cases under the Bankruptcy Act where the receiver and the succeeding trustee could receive maximum compensation for performing the same functions," and could result in "double-dipping," thus depriving creditors of those monies. *Id.* at 783. The court went on to reason that, while Section 326(c) addresses potential abuses by multiple trustees serving in the same case, it does not address compensation of former trustees in converted cases. Citing the fact that Chapter 7 Trustees and Chapter 13 Trustees engage in distinct tasks in the respective stages of the case in which they serve, the court found that compensation for each of the

37

trustees should be independently determined under Section 330, without application of Section 326(c). *Id.*

## G.

### *Analysis*

Upon consideration of the numerous theories discussed above, this Court concludes the more compelling position is that which precludes awarding compensation based upon the plain language of Section 326(a). This Court finds, as did the courts in *Fischer*, *Woodworth*, *Murphy*, *Celano*, and *Meadows*, that Congress has spoken clearly in Section 326(a), and thus, it would be inappropriate for this Court to look beyond the bounds of the statute to formulate a basis upon which to award Ruby compensation.

Our analysis begins, as it necessarily must, with the statutory language of Section 326. It is a well-settled principle that "'unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language.'" *Hillman v. Internal Revenue Serv.*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)). Two exceptions exist regarding the application of a statute's plain language. In interpreting Section 365 of the Bankruptcy Code, the Fourth Circuit Court of Appeals recently stated:

> [A] court is obliged to apply the Plain Meaning Rule unless the party contending otherwise can *demonstrate* that the result would be contrary to that intended by Congress. Requiring a demonstration that the plain meaning of a statute is at odds with the intentions of its drafters is a more stringent mandate than requiring a showing that the statute's literal application is unreasonable in light of bankruptcy policy.

38

*RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra)*, 361 F.3d 257, 269 (4th Cir. 2004) (citing

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)). The Fourth Circuit drew

on the earlier ruling of the United States Supreme Court in the *Ron Pair Enterprises* case,

in which the Court held that "[t]he plain meaning of legislation should be conclusive, except

in 'rare cases [in which] the literal application of a statute will produce a result demonstrably

at odds with the intentions of its drafters.'" *Ron Pair Enters.*, 489 U.S. at 242.

The second exception to the Plain Meaning Rule is triggered "'when literal application

of the statutory language at issue results in an outcome that can truly be characterized as

absurd, i.e., that is so gross as to shock the general moral or common sense.'" *In re Sunterra*,

361 F.3d at 265 (quoting *Hillman*, 263 F.3d at 342). As to both of these exceptions, the

instances in which either should apply should be "'exceptionally rare.'" *Id.* (quoting

*Hillman*, 263 F.3d at 342).

In *Sunterra*, the Fourth Circuit considered, *inter alia*, the proper interpretation of

Section 365 of the Bankruptcy Code and whether the word "or" should be construed in the

disjunctive or as the conjunctive "and." *Id.* at 262 and fn.8. The Court found that, contrary

to Sunterra's argument, reading Section 365(c) literally would not produce an absurd result

as it would not render other provisions of Section 365 inoperative, nor would it create an

irreconcilable conflict with itself or neighboring statutes. *Id.* at 267. The Court also found

that a literal reading of the statute would be consistent with the general bankruptcy policy

constructed by Congress. In making the latter finding, the court explained that "if it is

39

plausible that Congress intended the result compelled by the Plain Meaning Rule, we must reject an assertion that such an application is absurd." *Id.* at 268 (citing *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)).

Those courts which turn to the legislative history of Section 326 for support of their theories fare no better when the Plain Meaning Rule is applied. As stated in this Circuit, "legislative history suggesting an interpretation contrary to a statute's plan meaning is not necessarily sufficient to override the Plain Meaning Rule. . . . [C]ourts are not free to replace a statute's plain meaning with 'unenacted legislative intent.'" *Id.* at 270 (citing *Sigmon Coal*, 226 F.3d at 306; *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)). Other factors that the Fourth Circuit cited in *Sunterra* in declining to adopt the legislative intent of Section 365 over the statute's plain meaning were that the legislative report cited by the defendant-appellee was written several years prior to the statute's enactment and the fact that the report reflected the views of only a single house committee. *Id.*

In applying the principles outlined in *Sunterra* and the cases cited therein, this Court concludes that the Plain Meaning Rule should apply to its interpretation of Section 326. In this Court's view, the language of Section 326(a) is clear and unambiguous: that reasonable compensation to a Chapter 7 Trustee is to be computed based "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." It is undisputed that Ruby did not make any

distributions or turn over any money in any of the four above-captioned cases. Thus, without

any disbursements or money turned over to any parties in interest, there can be no calculation

of compensation. *See In re Celano*, No. CIV.A. 01-310, 2001 WL 1586778, at \*3-4 (E.D.

La. Dec. 7, 2001), *aff'd*, 54 Fed. Appx. 591 (5th Cir. 2002) (unpublished) (noting that the

phrase "disbursed or tuned over by the trustee" means that the trustee must have actually paid

out funds in order to be compensated); *see also In re Meadows*, No. 7-97-02526, 2003 WL

477428, at \*2-3 (Bankr. W.D. Va. Jan. 6, 2003) (finding that Section 326(a) does not

authorize compensation where the trustee makes distributions only to himself and to the

debtor).

     This Court also finds that neither of the enumerated exceptions to the Plain Meaning

Rule apply in the instant matter. First, the result does not place Section 326(a) demonstrably

at odds with the intention of the drafters. It creates no irreconcilable conflict with itself or

with neighboring statutes. In fact, the contrary appears true, that any interpretation other than

an application of the plain meaning would place Section 326(a) in conflict with itself and

with neighboring statutes. Were former Chapter 7 Trustees allowed to recover compensation

in this instance, it is conceivable that former Chapter 13 Trustees could, in the future, profess

a like entitlement to a percentage of the funds that a Chapter 7 Trustee gathers and distributes

after a case is converted from a Chapter 13 case to a Chapter 7 case. Such claim would

clearly be in contravention to Section 326(b), which plainly allows only a Chapter 13 Trustee

to recover only a percentage of all Chapter 13 plan payments. While the issue posed in this

hypothetical is not before the Court, it does add further support to the Court's conclusion that Congress sought, by the plain language of Section 326(a), to likewise limit Chapter 7 Trustees' compensation based upon the distributions they make in a case.

Further, the result of interpreting Section 326(a) using the Plain Meaning Rule, while it may produce an unpopular result, such does not rise to the level required to trigger the absurdity exception. *In re Sunterra*, 361 F.3d at 268 (citing *Maryland State Dep't of Educ. v. United States Dep't. of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996)) (to trigger the absurdity exception, "the issue is not whether the result would be 'unreasonable,' or even 'quite unreasonable,' but whether the result would be *absurd*."). Many courts have fashioned remedies to award a former Chapter 7 Trustee compensation in situations similar to the ones currently before this Court, seemingly to avoid penalizing the trustees and to avoid the appearance of an inequitable result. It is this Court's view, however, that while the result of precluding compensation to the former Chapter 7 Trustee may be seen as harsh, Section 326(a) is clear and unambiguous and must be applied, despite any perceived harshness.

Additionally, as the courts in *Celano* and *Meadows* explain, Congress is the proper venue in which to seek a remedy to any problem with the result of applying statutory language. Such principle has been recently addressed by the Fourth Circuit: "As the Supreme Court has repeatedly emphasized, . . . Congress is the policymaker—not the courts. [P]ut simply, the modification of a statutory provision to achieve a preferable policy outcome is a task reserved to Congress." *Id.* at 269 (citations omitted). Congress was fully aware that

bankruptcy cases may be converted, either voluntarily or upon the motion of a party in

interest by virtue of the numerous provisions in the Code addressing conversions. Further,

Congress was doubtlessly aware of the absolute right of conversion it elected to confer upon

Chapter 7 debtors pursuant to Section 706(a). Thus, Congress could have stated, with regard

to the disbursement language in Section 326(a), that a Chapter 7 Trustee's compensation

would be based "upon the actual disbursement by the Chapter 7 Trustee, or, in a case which

has been converted, those disbursements made by the trustee in the converted case" or other

language to this effect. Congress, however, did not include such language, and this Court

will not read such language into the statute. If Congress desires that Chapter 7 Trustees be

compensated in a circumstance where a case is converted prior to any trustee disbursements,

then Congress is well-positioned to enact such a change.

The Court does not find persuasive the language in *In re Rodriguez*, which turned to

the legislative history of Section 326 to support its decision to award compensation to

Chapter 7 Trustees. The *Rodriguez* court cited to legislative history that discussed payments

to interim trustees (those trustees who serve prior to the election of a permanent trustee), as

opposed to trustees that subsequently serve following a conversion. *See In re Rodriguez*, 240

B.R. 912, 914 fn.1 (Bankr. D. Colo. 1999) (citing H.R. Rep. No. 95-595, at 327-28, *reprinted

in* 1977 U.S.C.C.A.N. 5963, 6283-84; S. Rep. No. 95-989, at 38, *reprinted in* 1978

U.S.C.C.A.N. 5787, 5824). Such a circumstance, however, is not wholly analogous to the

situation in the instant matter where two trustees have served while the bankruptcy case was

43

under different Chapters of the Bankruptcy Code.

In addition to the legal bases cited above, the Court also finds that certain policy reasons also support the preclusion of compensation for former Chapter 7 Trustees in these circumstances. The first of those policy reasons is based upon the fact that the debtors have a one-time absolute right to convert their case. Section 706 of the Bankruptcy Code provides that: "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). The right to convert a Chapter 7 case to one under another chapter of the Bankruptcy Code was included because "'the debtor should always be given the opportunity to repay his debts." *Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir. 1993) (citing H.R. Rep. No. 95-595, at 380, *reprinted in* 1977 U.S.C.C.A.N. 5963, 6336; S. Rep. No. 95-989, at 94, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880). There is no dispute that the above-captioned cases were all eligible to be converted from ones under Chapter 7 to ones under Chapter 13. Thus, if this Court were to award compensation to the former Chapter 7 Trustee in these cases, such action could dilute the debtors' absolute right to convert and in essence punish the debtor (and the debtor's creditors) for exercising the rights bestowed upon them by Congress.

Second, this Court finds that a Chapter 7 Trustee is statutorily charged to undertake his or her duties during the administration of a case regardless of an expectation of compensation. Section 704 provides, among other things, that the trustee *shall* "collect and

44

reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest," and "investigate the financial affairs of the debtor." 11 U.S.C. §§ 704(1), (4). The statutory, and thus mandatory, nature of the duties supports the notion that Chapter 7 Trustees should not expect compensation for performing them except in accordance with the provisions of the Bankruptcy Code. The court in the *Fischer* case also alluded to this policy reasoning in its discussion regarding the work of the trustee being a "difficult and risky business." *In re Fischer*, 210 B.R. 467, 469 (Bankr. D. Minn. 1997); *see also infra* Section IV.B. As the *Fischer* court stated, Chapter 7 Trustees are guaranteed only that portion of the filing fee set forth in Section 330(b) of the Bankruptcy Code, and trustees assume the risk that either a debtor's assets are exempt from administration or that the debtor will convert prior to final administration of the case. *See In re Fischer*, 210 B.R. at 469. The court in *Murphy* adopted this reasoning as well, explaining that while trustees often encounter cases where there are no assets to collect and distribute, it was anomalous to suppose that Congress would have intended for an unstated exceptions to exist with regard to Section 326(a). *See In re Murphy*, 272 B.R. 483, 486 and fn.8 (Bankr. D. Colo. 2002).

For the same reasons that Chapter 7 Trustees should not expect compensation except in accordance with the express provisions of the Bankruptcy Code, the quantum meruit argument also fails. While awarding compensation under the theory of quantum meruit may encourage diligence on the part of the Chapter 7 Trustees, this Court finds that such remedy

is not applicable to the instant cases.

Quantum meruit is an equitable doctrine that is "premised on the notion that one who benefits from the labor of another should not be unjustly enriched." *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992) (citing *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363, 363-64 (1983)). Under Virginia law, to recover under quantum meruit, the claimant must show that: (1) valuable services were rendered, (2) to the defendant, (3) which were requested and accepted by the defendant, (4) under such circumstances as reasonably notified the defendant that the claimant in performing the work, expected to be paid by the defendant. *Id.* (citing *Humphreys Rys., Inc. v. F/V Nils S*, 603 F.Supp. 95, 98 (E.D. Va. 1984)). The rule in quantum meruit cases is well-settled that recovery on this basis is available only in the absence of an express contract on the same matter. *Id.* (citations omitted). Thus, recovery under the theory of quantum meruit may only be had upon the basis of an implied contract. Rendering services alone, however, does not create an implied contract, nor does officiously conferring benefits upon another. *Humphreys Rys.*, 603 F.Supp. at 98. Instead, recovery cannot occur without a showing of "sufficient additional facts that imply a promise to pay." *Id.* at 99 (citing *Mullins v. Mingo Lime Co.*, 176 Va. 44, 51, 10 S.E.2d 494-95 (1940)). In addition, the expectation of payment must be a reasonable one. *Loudin Ins. Agency, Inc. v. Aetna Casualty & Surety Co.*, 966 F.2d 1443 (4th Cir. 1992) (unpublished table decision).

The instant cases do not fit into the traditional quantum meruit framework, as no

contract, implied or otherwise, exists. While Ruby's efforts may well have been valuable to

these four bankruptcy estates in terms of a greater recovery being had by the creditors,

Chapter 7 Trustees, as addressed above, are statutorily bound to perform those duties. Even

if the Court were to ignore this fact, however, quantum meruit cases, in addition to being

cases based upon a contract, are also based upon an expectation of payment, which, as this

Court discussed above, should not exist on the part of the Chapter 7 Trustee. Even if the

Former Chapter 7 Trustee had an expectation of payment, such was not reasonable given the

duties of the trustee set forth in the statutory scheme and the language in Section 326(a),

which, as this Court has found, plainly states that compensation will be awarded only if the

Chapter 7 Trustee makes disbursements. Like the court in *Rodriguez*, this Court also views

Section 330 as mandating essentially a quantum meruit approach to trustee compensation.

*In re Rodriguez*, 240 B.R. 912, 914 (Bankr. D. Colo. 1999). Section 330 does not, as the

court in *Colburn* supposes, create a mechanism for the compensation of trustees without any

maximum limitation. *See In re Colburn*, 231 B.R. 778, 782-83 (Bankr. D. Or. 1999). While

Ruby's compensation might otherwise be reasonable under Section 330, the plain language

of Section 326(a) still controls whether Ruby receives any compensation at all.

     Some courts that permit compensation on a quantum meruit basis have done so when

the trustee has uncovered undisclosed assets, acknowledging the extraordinary circumstances

that must exist to support an award of compensation. *See, e.g.*, *In re Moore*, 235 B.R. 414,

417 (Bankr. W.D. Ky. 1999), *aff'd sub nom. Schilling v. Moore*, 286 B.R. 846 (W.D. Ky.

2002) (noting that a trustee's application for compensation must demonstrate the nexus between his efforts and the uncovering of assets). Thus, even if this Court were inclined to adopt the quantum meruit approach, it is undisputed that what occurred in the above-captioned cases was not the uncovering of assets, *per se*, but rather, the engagement of the Chapter 7 Trustee and the debtors in a contest of the valuation of the assets that the debtors did disclose.[12]

The Court would be remiss to fail to address the remaining theories that it has rejected. While it is doubtless that an award of compensation to a diligent Chapter 7 Trustee is often appealing as a matter of equity or fairness, the theories relied upon to support this desirous result, upon reflection, appear to be analytically flawed. With regard to the "multiple" or "composite" trustee theory, this Court is of the opinion, as set forth above, that it is improper to read into the statute a meaning that is not there. *See In re Rodriguez*, 240 B.R. 912, 915-16 (Bankr. D. Colo. 1999) (finding that Section 326(a) referred to a generic, "composite" trustee and to the aggregate of the distributions made by any trustee at any point during the case). For the same reasons that the Court has adopted the Plain Meaning Rule and rejected the "multiple" or "composite" trustee theory, the Court also rejects the

---

[12] The Court would be less than candid if it did not indicate its view that the sheer number of converted cases in which the Chapter 7 Trustee seeks quantum meruit compensation illustrates the wisdom of Congress to provide for a simply applied measure in determining compensation. While it is doubtless that basing compensation on actual disbursements may from time to time result in a trustee in a converted case being uncompensated for his or her efforts, requiring the courts to undertake an intensive, case-by-case factual analysis of the benefit (or lack thereof) conferred by a Chapter 7 trustee in every converted case was a task Congress wisely elected not to confer upon us.

"constructive disbursement" theory, which is quite similar to the "composite" trustee theory,

with the exception that the statutory cap applies in the former theory. Further, at least one

decision in this district has discussed the interpretation of Section 326 with regard to the

imputation of "moneys disbursed or turned over" by a Chapter 7 Trustee. *In re JKJ*

*Chevrolet, Inc.*, No. 91-14535-T, 2000 WL 1191028, at *2 (Bankr. E.D. Va. Mar. 30, 2000).

*JKJ Chevrolet* involved the question of whether monies recovered in a preference action by

a creditor, which action the Chapter 7 Trustee had transferred to the creditor in satisfaction

of that creditor's superpriority claim, could be imputed upon the Chapter 7 Trustee for the

purpose of computing his compensation. The court in that case found that no basis exists for

such imputation. *Id.* (citing *Staiano v. Cain* (*In re LAN Assocs. XI, L.P.*), 192 F.3d 109 (3d

Cir. 1999); *Pritchard v. United States Trustee* (*In re England*), 153 F.3d 232 (5th Cir. 1998);

*Connolly v. Harris Trust Co. of Cal.* (*In re Miniscribe Corp.*), 241 B.R. 729 (Bankr. D. Colo.

1999); *In re Arius, Inc.*, 237 B.R. 843 (Bankr. M.D. Fla. 1999)). Importation of a theory of

"constructive" disbursement scheme of compensation of Chapter 7 Trustees simply appears

to be rewriting these statutes to obtain a desired result.

Next, despite a different view point as to the outcome, this Court agrees with the

analysis in *Rodriguez* with regard to rejecting the "separate and distinct case" theory. *See In*

*re Rodriguez*, 240 B.R. at 915. Like the *Rodriguez* court, this Court also finds that the

conversion of a case does not create a separate case. A case is commenced upon its filing

date, and that filing date does not change upon the motion of a party to convert a case.   11

49

U.S.C. § 348(a).[13]  Accordingly, conversion of a case from one chapter to another does not

create a new case. *United States Trustee v. Kinser*, 128 B.R. 417, 419 (W.D. Va. 1991)

(citing numerous cases).  Thus, to declare that a separate and distinct case results upon the

entry of an order converting a case is at odds with the specific provisions of the Bankruptcy

Code.

The dilemma this Court finds inherent in the theory that utilizes Section 105(a) as the

basis for awarding compensation is just that to which the court in *In re Celano* alludes, in

that Section 105(a) permits the Court only to fashion remedies "to carry out the provisions

of this title." 11 U.S.C. § 105(a). Thus, "[a]lthough bankruptcy courts are courts of equity,

their equitable powers are nonetheless circumscribed by limitations contained in the

Bankruptcy Code." *In re Celano*, No. CIV.A. 01-310, 2001 WL 1586778, at *4 (E.D. La.

Dec. 7, 2001) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *United

States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). The Court finds that this statement

in *Celano* is a more accurate reflection of its powers than the statement made by the court in

the *Ferris* and *Owens* cases, which found that compensation could be awarded absent a

specific preclusion of such by virtue of the powers under Section 105(a) of the Bankruptcy

---

[13] Section 348(a) provides:

Conversion of a case from a case under one chapter of this title to a case under
another chapter of this title constitutes an order for relief under the chapter to
which the case is converted, but, except as provided in subsections (b) and (c) of
this section, does not effect a change in the date of the filing of the petition, the
commencement of the case, or the order for relief.

Code.[14]  *In re Owens*, No. 99-11881, 2000 WL 1672331, at *2 (Bankr. N.D. Cal. Nov. 2,

2000); *In re Ferris*, No. 99-13328, 2000 WL 877038, at *2 (Bankr. N.D. Cal. June 11,

2000).[15]

Further, the application of Section 105(a) must be exercised with caution. *See Finney*

*v. Smith (In re Finney)*, 992 F.2d 43, 44 (4th Cir. 1993); *Official Comm. of Equity Sec.*

*Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987), *cert. denied*, 485 U.S. 962 (1988). As

the Fourth Circuit has reminded:

> While the equitable powers emanating from § 105(a) are quite important in the
> general bankruptcy scheme, and while such powers may encourage courts to
> be innovative, and even original, these equitable powers are not a license for
> a court to disregard the clear language and meaning of the bankruptcy statutes
> and rules.

---

[14]  The Supreme Court considered a similar argument in the bankruptcy context in
*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000). There,
the Court analyzed whether the provisions of 11 U.S.C. § 506(c), which limit surcharge of
property encumbered by a secured creditor's lien to "the trustee," could include an administrative
claimant. The petitioner argued that " all this actually 'says' is that the trustee may seek recovery
under the section, not that others may not." *Id*. at 6. The Court rejected this notion, finding that
"this theory—that the expression of one thing indicates the inclusion of others unless exclusion is
made explicit—is contrary to common sense and common usage." *Id*. at 8.

[15]  In a recent article, Bankruptcy Judge Ahart of the Central District of California
expressed his view that bankruptcy judges have "scant perogative to invoke inherent powers . . .
and *no* general equitable power." Alan M. Ahart, *The Limited Scope of Implied Powers of a
Bankruptcy Judge: A Statutory Court of Bankruptcy, Not a Court of Equity*, 79 AM. BANKR. L.J.
1, 1 (2005). Judge Ahart reasoned that the Bankruptcy Court is not a court of equity, and thus, a
bankruptcy judge is prohibited from overriding bankruptcy law on equitable grounds. Further,
bankruptcy judges should refrain from invoking equitable doctrine unless doing so is authorized
by a specific statutory provision or other applicable, non-bankruptcy law. *Id*. at 32-33. Thus,
according to Judge Ahart, Section 105(a) may be invoked only if a Bankruptcy Court is called
upon to decide an issue under non-bankruptcy law where the proceeding cannot be characterized
as carrying out the provisions of the Bankruptcy Code, or where the Bankruptcy Code so
provides. *Id*. at 6.

*Mabey*, 832 F.2d at 302. Thus, the Court must avoid "'redistribut[ing] rights in accordance

with . . . personal views of justice and fairness, however enlightened those views may be.'"

*Id.* (citing *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 791 F.2d 524, 528 (7th Cir.

1986)). The outcomes reached in the *Ferris* and *Owens* cases, discussed above, appear to be

in contravention to the application of the equitable powers in Section 105(a) in this Circuit.

Therefore, this Court finds that Section 105(a) does not support an award of compensation

to a former Chapter 7 Trustee in these circumstances. Further, because this Court finds that

Ruby is not entitled to compensation, it need not reach the issue of whether Ruby's claim

should be afforded administrative priority treatment.

## V.

## SUMMARY

This Court's admiration and professional respect for the Chapter 7 Trustees

empaneled in the Eastern District of Virginia is both substantial and long-standing. As such,

the assertion by a Chapter 7 Trustee that his efforts in a case subsequently converted to a

proceeding under Chapter 13 of the Bankruptcy Code merit compensation must receive the

full attention and consideration of this Court. It is not without substantial remorse and

trepidation that this Court must answer the Chapter 7 Trustee's plea in the negative.

However, as this Court has concluded in other bankruptcy contexts, the Court must found its

decision not upon its own notions of "sympathy" or "fairness" but on the express provisions

of the Bankruptcy Code. *See Ferraro v. Ballard*, Nos. 00-71225-S, 00-7041-S, 2001 WL

1946239, at *27 (Bankr. E.D. Va. July 18, 2001), *aff'd*, 69 Fed. Appx. 145 (4th Cir. 2003) (unpublished) (per curiam).    Congress would do well to consider whether in the circumstances of cases converted to Chapter 13, a different measure of Chapter 7 Trustee compensation other than that expressly provided by Section 326 is appropriate.    That task, under our scheme of constitutional government, lies exclusively within the province of Congress.   For the reasons aforedescribed, the claims of the Former Chapter 7 Trustee for compensation in these cases converted to Chapter 13 of the Bankruptcy Code are not allowed.

A separate order will issue.

The Clerk shall deliver copies of this Memorandum Opinion to David R. Ruby, Former Chapter 7 Trustee; Frank J. Santoro, Chapter 13 Trustee; Richard G. Poinsett, Counsel for Debtors Nathaniel R. and Ina M. Silvus, and for Debtors Joey B. and Lisa A. Sanders;  Michael C. Bruno, Counsel for Debtors Donald E. and Rosemarie Jurgensen; Michael J. Heath, Counsel for Debtor Steve S. Lee; and Robert Van Arsdale, Office of the United States Trustee.

Entered:  8/26/05

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

53